MANUEL FERNANDEZ, a.k.a. MANUEL A. FERNANDEZ, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fernandez v. Commissioner
Docket No. 22721-86.
United States Tax Court
T.C. Memo 1987-557; 1987 Tax Ct. Memo LEXIS 549; 54 T.C.M. (CCH) 1036; T.C.M. (RIA) 87557; November 9, 1987. Robert S. Steinberg, for the petitioner. Claudine D. Ryce, for the respondent. SWIFT
MEMORANDUM FINDINS OF FACT AND OPINION SWIFT, Judge: This matter is before the Court on the parties' cross-motions to dismiss for lack of jurisdiction. Respondent's motion is based on the fact that the petition herein was filed beyond the 90-day period *550 provided in section 6213. [1] Petitioner's motion is based on the argument that respondent failed to mail the notice of deficiency herein to petitioner's last known address, as required by section 6212(b)(1). By notice of deficiency dated September 2, 1983, respondent determined the following deficiency in and additions to petitioner's 1981 Federal income tax liability: Additions to Tax, Secs.
Year
Deficiency
6651(a)(1)
6653(a)(1)
6653(a)(2)
6654
1981
$ 6,764,796
$ 1,691,199
$ 338,240
*
$ 518,350
On November 10, 1986, an evidentiary hearing was held in Miami, Florida, and each party was allowed to call witnesses and offer exhibits into evidence. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioner resided in Hillside, New Jersey, at the time his petition was filed. On May 18, 1981, petitioner flew from Newark, New Jersey, to Miami, Florida, using a roundtrip airline ticket with an open return date. *551 While in Florida, petitioner stayed at a house located at 10850 SW 93rd Street, in Miami (hereinafter referred to as the "Miami house" or the "Miami address"). The Miami house was rented for a three-year period beginning in January of 1981 by Bounty Fisheries, Ltd., Inc., a corporation organized in the Cayman Islands. At the beginning of the rental period, the occupants of the Miami house installed an eight-foot high, solid wood fence across the front of the house. The fence was equipped with a sophisticated lock system and an electronic gate. On May 22, 1981, at 3:20 a.m., while petitioner and two acquaintances were asleep in the Miami house, unknown assailants fired bullets into the house, wounding petitioner in the stomach and in the hip. Paramedics from the Dade County (Florida) Fire Department rushed to the scene and transported petitioner to Baptist Hospital of Miami where he was admitted at 4:10 a.m. Upon his admission to the hospital, petitioner completed a patient information form. On that form, petitioner indicated his home address as 682 Union Ave., Hillside, New Jersey 07205. For his telephone number, petitioner listed his home telephone number in New Jersey. *552 Petitioner also noted on the patient information form his date of birth of September 21, 1946, his employment with Fernandez Insurance & Travel Agency, and his wife's employment with Schering Pharmaceuticals in Bloomfield, New Jersey. On May 22, 1981, petitioner's wife flew to Miami from New Jersey to be with her husband in the hospital. On May 23, 1981, upon request, petitioner was discharged from Baptist Hospital, and he and his wife returned by plane to their home in New Jersey approximately 36 hours after the shooting on May 22, 1981. A few hours after the shooting on May 22, 1981, officers and detectives from Dade County Public Safety Department (PCPSD) were dispatched to the Miami house to investigate the shooting incident. A DCPSD officer interviewed one of petitioner's acquaintances who was in the Miami house at the time of the shooting. The acquaintance told the officer that petitioner was staying in the house for approximately one month while the owner of the house was in New York for an unknown period of time. In addition, parked in front of the Miami house, among six other automobiles, was a Cadillac El Dorado that bore New Jersey license plates. During their *553 investigation, the DCPSD officers observed white powder in an envelope in the master bedroom of the Miami house and other items that they considered to be narcotics paraphernalia. Two of the officers, therefore, left the house to obtain a search warrant. One officer remained at the house to stand guard while the search warrant was being obtained. While guarding the house, the officer received a number of phone calls at the Miami house for either "Manny" or "Manuel Fernandez." None of the individuals placing the calls would identify himself or would leave his name or phone number. As a result of the search conducted at the Miami house, the following items were found and seized by DCPSD: Approximately three pounds of marijuana, one and one-half grams of cocaine, drug transaction records, $ 147,500 in cash, two money-counting machines, a telephone wire tap analyzer, four surveillance detectors, one rifle, nine pistols, and assorted ammunition. DCPSD apparently concluded on the basis of clothes found in the house, food found in the refrigerator, and the telephone calls that were made to petitioner that petitioner resided at the Miami address. Following their investigation of *554 the shooting incident, the DCPSD officers prepared a police report. In the report, the DCPSD officers indicated that petitioner was the victim of the shooting, and that petitioner's address was 10850 SW 93rd St. (the street address of the Miami house). However, reference to Elizabeth, New Jersey, also was indicated in the report as an address for petitioner. Petitioner's date of birth of September 21, 1946 was indicated in the report. The police report indicated that petitioner had been taken to the emergency room at Baptist Hospital. The police report also revealed that the Cadillac El Dorado that was parked at the Miami house was registered in the name of Fernandez Agency, Inc. of 819 Elizabeth Avenue, Elizabeth, New Jersey, and stated that the car had been impounded by DCPSD pending a search for contraband. On May 24, 1981, neighbors to the Miami house noticed that the the Miami house was being vacated. The record does not indicate the identity of the individuals who actually removed the belongings from the Miami house, but apparently all the furniture and clothing in the house were removed. The lessor of the Miami house received no further rental payments with respect *555 to the house from Bounty Fisheries, Ltd., after May of 1981. On May 26, 1981, a narcotics detective from DCPSD telephoned a revenue agent of the Internal Revenue Service (IRS) Special Enforcement Program in Miami and informed the revenue agent of the $ 147,500 in cash and the drug transaction records that were discovered at the Miami house. The narcotics detective suggested that the IRS may wish to claim a portion of the cash by initiating assessment procedures. The narcotics detective also told the revenue agent that petitioner had been taken to Baptist Hospital, that his date of birth was September of 1946, and that petitioner had a New Jersey driver's license. On May 27, 1981, the revenue agent reviewed the police report concerning the shooting incident and the drug transaction records that were seized during the search of the Miami house. The revenue agent also went to the Miami house to interview petitioner but was told by neighbors and assumed from newspapers scattered on the lawn outside the house that dated back to May 24, 1981, that petitioner had moved from the house on May 24, 1981. During the next two to three weeks, attempts were made by the revenue agent to *556 locate petitioner. In this regard, a computer search was conducted of all individuals residing in the Miami area with the name "Manuel Fernandez." The results indicated that approximately 700 people with that name were living in Miami, and that none of them resided at the Miami address. Next, the Dade County property records were searched. Many individuals by the name of Manuel Fernandez owned property in Dade County. None of those individuals, however, owned property at the Miami address. Finally, the United States Customs Service was contacted, but the Customs Service was not able to assist in identifying which, if any, of the many "Manuel Fernadezes" in Florida was petitioner. In the efforts to locate petitioner's address, the revenue agent did not contact the DCPSD officers and detectives that investigated the shooting incident. Nor was the Baptist Hospital contacted which is located approximately 30 minutes from the IRS office in downtown Miami. On May 27, 1981, which is the same day the revenue agent's investigation began, an assistant state attorney for the State of Florida instituted a proceeding against petitioner in Dade County Circuit court seeking forfeiture *557 of the $ 147,500 in cash that was found in the Miami house. On June 6, 1981, the IRS terminated petitioner's taxable year beginning January 1, 1981, and ending May 22, 1981, and assessed a deficiency in Federal income tax in the amount of $ 6,850,391. The amount of the assessment was based on the retail value of the drugs that were sold (less the cost of those drugs) based upon the drug transaction records that were seized at the Miami address. Because petitioner's social security number was not known, a dummy social security number was used for the termination assessment. On June 12, 1981, a revenue officer attempted to deliver a notice of the termination assessment to petitioner at the Miami address. The revenue officer visited the Miami address but found the house vacant. The revenue officer left the termination notice under the front door of the Miami house, and began efforts to locate petitioner. In that regard, the revenue officer looked through the Miami telephone directory and discovered 84 listings for "Manuel Fernandez," none with the Miami address. The revenue officer also contacted an attorney in Miami who DCPSD claimed was representing petitioner. The attorney *558 told the revenue officer that he had no address for petitioner other than the Miami address. Unable to locate petitioner, the revenue officer filed a Notice of Federal Tax Lien in Dade County against petitioner. On October 7, 1981, DCPSD released the Cadillac El Dorado registerd in the name of Fernandez Agency and seized following the May 22, 1981, shooting incident to an attorney in Miami who was representing petitioner in the forfeiture action. On December 7, 1981, the Miami attorney representing petitioner in the forfeiture action and an assistant state attorney for the State of Florida entered into a settlement of the forfeiture action. The following items which were found in the Miami house after the May 22, 1981, shooting incident were released to petitioner's attorney: $ 62,500 in cash, on money-counting machine, the telephone wire tap analyzer, and the four surveillance detectors. Petitioner, through his attorney, released his claim to the remaining cash (namely, $ 85,000) and other items that were found in the Miami house on May 22, 1981. On November 26, 1982, petitioner and his wife filed a joint Federal income tax return for 1981 with the IRS Service Center in *559 Holtsville, New York. Included with the return was a payment of $ 21,505 which represented Federal income tax owed by petitioner and his wife for 1981. Attached to petitioner's 1981 joint Federal income tax return was a W-2 Form that indicated that during 1981 petitioner was employed by Fernandez Agency at 815 Elizabeth Avenue in Elizabeth, New Jersey. For 1967 through 1984, petitioner filed Federal income tax returns with the IRS Service Center in Holtsville, New York. On the 1967 through 1970 tax returns, petitioner listed his former residence in Elizabeth, New Jersey as his address. On the 1971 through 1984 tax returns, petitioner listed his address as 682 Union Avenue, Hillside, New Jersey 07205 (hereinafter referred to as the "New Jersey address"), which is the same address petitioner recorded on the patient information form at Baptist Hospital of Miami. By letter dated February 25, 1983, the Holtsville Service Center corresponded with petitioner and his wife at the New Jersey address concerning a deficiency in their Federal income tax liability for 1981 in the amount of $ 1,319 based on an examination of their 1981 joint Federal income tax return. The record does not *560 indicate the ultimate disposition of that deficiency (nor is it relevant to our decision herein). On September 2, 1983, the IRS District Director's Office in Jacksonville, Florida, issued the notice of deficiency at issue herein. That notice of deficiency is based upon and replaced the termination assessment described above for the period January 1 through May 22, 1981. The notice of deficiency was mailed by certified mail to petitioner at the Miami address but was returned to the District Director's Office undelivered. On September 10, 1984, due to petitioner's failure to file a petition in this Court within 90 days after the notice of deficiency was mailed, the Jacksonville District Director's Office entered an assessment against petitioner for the deficiency and additions to tax herein plus accrued interest. On November 12, 1984, the District Director's Office abated the termination assessment that had been entered in June of 1981, because the termination assessment was replaced by the notice of deficiency herein. In April of 1985, another revenue officer in Miami was assigned the task of collecting the tax that was assessed against petitioner on September 10, 1984. *561 After unsuccessfully attempting to locate petitioner in the Miami area, the revenue officer spoke with the first revenue officer who previously had been assigned to serve notice of and collect the termination assessment. The first revenue officer suggested that the Baptist Hospital be contacted to determine if the hospital had petitioner's current address in connection with any outstanding medical bills arising from the May 1981 shooting incident. The revenue officer visited Baptist Hospital on December 3, 1985, and discovered petitioner's New Jersey address and telephone number recorded on the patient information form. On March 27, 1986, the revenue officer mailed to petitioner at the New Jersey address by certified mail a demand for payment and a final notice of intention to levy with respect to the deficiency and additions to tax at issue in this case. The total amount due according to the demand for payment was $ 13,485,905.99. That correspondence was the first notice received by petitioner with respect to the notice of deficiency herein. On April 19, 1986, respondent filed a notice of federal tax lien against petitioner in New Jersey in the amount of $ 13,485,905.99. Petitioner *562 filed his petition with this Court on June 24, 1986. OPINION Under section 6212(a), if the Secretary of the Treasury determines a deficiency in Federal income tax, he is authorized to send a notice of deficiency to the taxpayer by certified mail notifying the taxpayer of such deficiency. Section 6212(b)(1) further provides that the mailing of the notice of deficiency to the taxpayer's "last known address" constitutes sufficient notice of the deficiency. If the notice of deficiency is mailed to the taxpayer's last known address, the taxpayer has 90 days (or 150 days if the notice of deficiency is addressed to a person who is outside the United States) after the notice of deficiency is mailed to file a petition with this Court. Sec. 6213(a). The Code does not require that the taxpayer actually receive the notice of deficiency if the notice of deficiency is mailed to the taxpayer's last known address. ; . For purposes of section 6212(b)(1), a taxpayer's "last known address" is a term of art and refers to the address, determined by all of the surrounding *563 facts and circumstances, at which respondent reasonably believed the taxpayer wished to receive mail at the time the notice of deficiency was mailed. , affg. a Memorandum Opinion of this Court, cert. denied ; ; . Respondent is required to exercise reasonable diligence in attempting to ascertain this address. ; . The burden is on the taxpayer to prove that reasonable diligence was not exercised by respondent. , and cases cited therein; . Our inquiry focuses on whether respondent, in September of 1983, exercised reasonable diligence in determining that the Miami address was petitioner's last known address. In making our decision, we must examine all of the information available *564 to respondent on September 2, 1983, the day the notice f deficiency was mailed to petitioner. . It was obvious to respondent that petitioner did not reside at the Miami address on September 2, 1983. Petitioner argues that respondent failed to exercise reasonable diligence in ascertaining the address of petitioner at that time because of obvious leads that, if investigated, would have revealed petitioner's correct address in New Jersey. The DCPSD police report disclosed that petitioner had a New Jersey address and provided a date of birth for petitioner. The Cadillac El Dorado that was seized by DCPSD at the Miami address was registered in the name of petitioner's business at a New Jersey address. Furthermore, petitioner argues that the name of the business was so similar to petitioner's name that his business in New Jersey should have been contacted, as well as the New Jersey Department of Motor Vehicles, to ascertain the identity and whereabouts of petitioner. Finally, petitioner emphasizes that respondent could have readily obtained his New Jersey address from the patient information form at the Baptist Hospital of Miami. *565 Respondent argues that the facts and circumstances surrounding the shooting incident on May 22, 1981, establish that the Miami address was petitioner's last known address for purposes of mailing the notice of deficiency on September 2, 1983. The following facts, among others, surrounding the May 22, 1981, shooting incident, might be a basis for inferring that the Miami address was petitioner's last known address as of the date of the shooting in 1981: The fact that petitioner was sleeping in the house, the phone calls that were placed to petitioner at the Miami house after the shooting incident, the fact that rent no longer was paid after petitioner moved out, and the claim by petitioner that he owned the cash and property that was seized by DCPSD from the Miami house. By September 2, 1983, however, respondent knew that petitioner no longer lived at the Miami address. Even assuming respondent was justified in concluding that the Miami address was petitioner's address in May of 1981, the question we must answer is whether respondent was justified in concluding that the Miami address still was petitioner's "last known address" in September of 1983, more than two years after *566 respondent knew that petitioner had moved out of the Miami house. Based on the record before us, we conclude that respondent did not exercise reasonable diligence in determining that the Miami address was petitioner's last known address in September of 1983. Based on information available to respondent, respondent reasonably should have contacted the Fernandez Agency in New Jersey, the New Jersey Department of Motor Vehicles, or the Baptist Hospital of Miami. Had respondent done so, he likely would have located the September 1983 address of petitioner, as well as the May 1981 address of petitioner's family. We note respondent's success in locating petitioner's address in 1986 by checking the hospital records that were readily available to respondent in 1981 and in 1983. ; . We hold that the Miami address was not petitioner's last known address within the meaning of section 6212(b)(1) on September 2, 1983, and that the notice of deficiency was not mailed in accordance with the requirements of that section. Accordingly, we grant *567 petitioner's motion to dismiss for lack of jurisdiction and deny respondent's motion to dismiss for lack of jurisdiction. An appropriate order will be issued.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as in effect during the year in issue. ↩
*. 50 percent of the interest due on $ 6,764,796. ↩